UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
MARK GAFT,

                         Plaintiff,                         **OPINION AND ORDER**

     -against-                                **07-CV-527 (NG)(LB)**

MITSUBISHI MOTOR CREDIT OF
AMERICA, et al.,

                         Defendants.
-------------------------------------------------------------x
GERSHON, United States District Judge:

On February 2, 2007, plaintiff Mark Gaft filed a complaint alleging that defendants Equifax Information Services L.L.C. ("Equifax") and Mitsubishi Motor Credit of America ("MMCA") had misreported plaintiff's credit history in violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a-1681x, (the "FRCA"), and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1592a-1592p (the "FDCPA"). Plaintiff also alleged that defendants' actions violated state common law doctrines. On June 28, 2007, plaintiff filed an Amended Complaint adding similar claims against defendants Experian Information Solutions, Inc. ("Experian") and Trans Union LLC ("Trans Union").

The instant lawsuit follows a prior action by plaintiff against these defendants filed in this court on April 21, 2005, Gaft v. Equifax, et al., 05-cv-1941 ("Gaft I"). Following settlements with certain defendants, Gaft I was dismissed with prejudice.

All defendants have filed motions to dispose of this litigation.

BACKGROUND

## Gaft I

In <u>Gaft I</u>, plaintiff alleged that numerous defendants, including defendants in this action, who were engaged in "consumer credit transactions" or who were "credit reporting agencies," wrongly reported that plaintiff had been extended accounts of credit and owed certain debts when, in fact, plaintiff had never applied for these accounts. Plaintiff alleged that the improper reporting stemmed from identity theft. Specifically, plaintiff alleged that MMCA wrongly informed defendant credit reporting agencies that MMCA had made ten loans to plaintiff. Plaintiff alleged that the credit reporting agencies improperly published the ten incorrect MMCA accounts, as part of plaintiff's credit history, as debts owed. Based on these allegations, plaintiff sought damages for common law negligence and violations of the FCRA.

On October 28, 2005, plaintiff amended his original <u>Gaft I</u> complaint, intentionally omitting claims against MMCA and later informing the court that the action had been dismissed as to MMCA.[1] On March 6, 2006, plaintiff executed settlement agreements with defendants Equifax and Trans Union dismissing those defendants from <u>Gaft I</u>. Pursuant to those settlements, plaintiff received consideration in exchange for (i) plaintiff's acknowledgement that a version of his credit report, in the form attached as an exhibit to the stipulated settlement, was "accurate and correct"; and (ii) releasing defendants Equifax and Trans Union from claims or causes of action which were raised, or which could have been raised in that action.

---

[1] Plaintiff did not specify whether the dismissal of MMCA was with or without prejudice and no stipulation of dismissal was ever filed with the court.

On March 27, 2006, following the settlement agreements, the court dismissed, with prejudice, the entirety of <u>Gaft I</u>, with leave to reopen the action within 60 days.[2]  On July 31, 2006, more than 60 days later, plaintiff moved, <u>pro se</u>, to reopen the litigation as to non-settling parties.  The court denied the request as untimely.

## Gaft II

Plaintiff now brings the above-captioned action, <u>pro se</u>, against MMCA, Equifax, Trans Union and Experian alleging that, sometime during 2007, following the dismissal of the prior action, plaintiff discovered an eleventh inaccurate debt (the "Eleventh Account"), purportedly owed to Mitsubishi, which was improperly reported by Equifax, Trans Union and Experian. Plaintiff alleges that he has no knowledge of this debt.

Plaintiff contends that, following his discovery of the Eleventh Account on a credit report published by Equifax, he "officially disputed the accuracy of his Credit Report with Equifax," but that Equifax "failed or otherwise refused to provide copies of any validation to the plaintiff as demanded in plaintiff [sic] letter of request pursuant to the [Fair Credit Reporting] Act."[3] Plaintiff alleges that he later discovered the Eleventh Account on credit reports published by Trans Union and Experian and he amended his complaint to add these parties as defendants. Plaintiff contends that the false reporting was a product of the defendants' negligence, gross negligence and disregard of their statutory obligations.

Plaintiff also avers, without detail, that he is the target of an "internal fraud" perpetrated by unknown persons employed by MMCA who have access to plaintiff's credit information.

[2] It appears that Experian, named as a defendant in <u>Gaft I</u>, never appeared in that action, but was dismissed pursuant to the court's March 27, 2006 Order dismissing "the remaining defendants."

[3] Plaintiff does not allege that he disputed the Eleventh Account with Trans Union or Experian.

Finally, plaintiff contends that defendants' actions with respect to the inaccuracies alleged in Gaft I and the instant action "caused [him] to suffer 11 or more acts of fraud committed against him."

Based on these allegations, plaintiff claims that each defendant (i) failed to meet its duties, under the FCRA, to investigate plaintiff's written dispute and correct erroneous information; (ii) engaged in a pattern of "willful noncompliance" with the duties set forth under the FCRA by repeatedly reporting 11 erroneous credit events; (iii) misrepresented debts owed by plaintiff in violation of the FDCPA; (iv) made false statements concerning erroneous debts owed amounting to "Slander of Title"; (v) committed fraud by "accepting a fraudulent credit application" causing plaintiff to be named "as the debtor of the defendant Mitsubishi on 11 or more separate occasions"; (vi) committed negligence per se by violating the FCRA; and (vii) acted with gross negligence by violating the FCRA. Plaintiff seeks both a money judgment and injunctive relief against defendants.

Defendants Equifax, Trans Union and Experian each move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Defendant MMCA moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the sake of judicial economy these motions will be addressed together.

DISCUSSION

**Legal Standards**

Motions for Judgment on the Pleadings

The motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure by defendants Experian, Equifax and Trans Union are evaluated under the same

standard as a motion to dismiss under Rule 12(b)(6). See Nicholas v. Goord, 430 F.3d 652, 658 n.8 (2d. Cir. 2005). On a motion to dismiss, the allegations in the complaint are accepted as true. See Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998). The court may properly consider any statements or documents which have been incorporated by reference into a complaint, although mere discussion or limited quotation of a document does not constitute incorporation. See Holmes v. Poskanzer, No. 08-CV-14750, 2009 WL 2171326, at *1 (2d Cir. July 21, 2009); Cosmas v. Hassett, 886 F.2d 8, 13 (2d Cir. 1989). However, even "where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders it integral to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

When considering a motion to dismiss, the court "view[s] all reasonable inferences that can be drawn from [the] allegations and [appropriate] documents in the light most favorable to the plaintiff." See Dangler v. N.Y.C. Off Track Betting Corp., 193 F.3d 130, 138 (2d Cir. 1999) (internal quotations and citations omitted). While a complaint need not include "detailed factual allegations" to survive a motion for judgment on the pleadings, it cannot be a conclusory "recitation of the elements of a cause of action." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Rather, a plaintiff must assert enough facts to state a claim to relief that is "plausible" on its face, rather than merely possible. Id. at 1950. A document filed pro se must be "liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Boykin v. Keycorp, 521 F.3d 202, 214 (2d Cir. 2008) (internal quotation marks omitted).

<u>MMCA's Motion for Summary Judgment</u>

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). A "genuine" issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). MMCA, as the moving party, bears the burden of showing that it is entitled to summary judgment. <u>Huminski v. Corsones</u>, 386 F.3d 116, 132 (2d Cir. 2004). "When the burden of proof at trial would fall on the nonmoving party, it is ordinarily sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." <u>Jaramillo v. Weyerhauser Co.</u>, 536 F.3d 140, 145 (2d Cir. 2008). The burden then shifts to the nonmovant to put forth admissible evidence sufficient to create a genuine issue of material fact for trial. <u>Id.</u> A court must draw all "justifiable inferences" in the nonmovant's favor, and construe all of the facts in the light most favorable to the nonmovant. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 255 (1986). In the case of Gaft, who is <u>pro se</u>, the court is further obliged to "read his supporting papers liberally, and . . . [to] interpret them to raise the strongest arguments that they suggest." <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994). Even a <u>pro se</u> party, however, "may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful." <u>Auguste v. New York Presbyterian Medical Center</u>, 593 F. Supp. 2d 659, 663 (S.D.N.Y. 2009) (quoting <u>Morris v. Lindau</u>, 196 F.3d 102, 109 (2d Cir. 1999)).

## MMCA's 56.1 Statement

Local Rule 56.1 provides that a motion for summary judgment is to be accompanied by a "short, concise statement . . . of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1(a). The party opposing the motion is to provide a responsive statement of "additional material facts as to which it is contended that there exists a genuine issue to be tried." Id. at (b) (emphasis omitted). Each statement by the movant or the opponent "must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)." Id. at (d). To the extent a Rule 56.1 statement cites to an affidavit, the affidavit must be a sworn statement of fact based on personal knowledge "that would be admissible in evidence at trial." Cameron v. Coach Apparel Store, No. 07-CV-3991, 2009 WL 536068, at *3 (S.D.N.Y. Mar. 3, 2009). A court may disregard "portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements." Hollander v. Am. Cyanamid Co., 172 F.3d 192, 198 (2d Cir. 1999).

Plaintiff, who appears pro se, did not submit a Rule 56.1 Statement in opposition to MMCA's motion. Although ordinarily a party's failure to oppose an adverse party's Rule 56.1 statement is grounds for admitting all proposed facts in that statement, the court has discretion to overlook failures to conform to the Local Rules, including Rule 56.1, especially where the party is pro se. See, e.g., Butler v. Potter, No. 06-CV-3828, 2009 WL 804722, at *1 n.1 (E.D.N.Y. Mar. 26, 2009). Therefore, the court will not deem MMCA's Rule 56.1 Statement admitted in its entirety; rather, the facts as set forth by MMCA will be deemed admitted only where a statement of fact in MMCA's Rule 56.1 Statement is supported by citations to admissible evidence. See Alfano v. NGHT, 623 F. Supp. 2d 355, 362 (E.D.N.Y. 2009).

Defendant MMCA states in its Rule 56.1 Statement that plaintiff, at an August 27, 2007, conference before the court, produced a "report" listing the false account which serves as the basis of his claims and "it was determined that the account [in the report] was reported prior to the settlement and dismissal of the First Action, and that Gaft knew it was reported." To support this statement, MMCA cites to the sworn affidavit of its counsel, which states,

> A case management conference was conducted in this matter on August 27, 2007. . . . One question was what was the "new" account that was reported for the first time in 2007. Gaft produced what he claimed was that new report. However, upon examination by counsel, it was determined that the account was reported prior to the settlement and dismissal of the First Action, and that Gaft knew it was reported.

(Affidavit of Kathleen Cavanaugh at ¶14.) Notably, in support of its motion for summary judgment, MMCA does not provide a transcript of the case management conference, offer the report which was presented by plaintiff or specify "who" made the determination that the account was reported prior to the settlement. Without more, these averments by MMCA concerning the content of the "report," and determinations about the "report," are inadmissible evidence barred as hearsay and by the best evidence rule.[4] See Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir. 1999) (hearsay assertion that would not be admissible if testified to at trial is not competent material for a Rule 56 affidavit); New York ex rel. Spitzer v. St. Francis Hosp., 94 F. Supp. 2d 423, 428 (S.D.N.Y. 2000) (disregarding, on summary judgment, statements concerning documents because the documents "themselves are the best evidence of their contents"). Therefore, for the purposes of determining MMCA's motion, this portion of the 56.1 statement will be disregarded by the court.

---

[4] MMCA has made no showing pursuant to Rule 1004 of the Federal Rules of Evidence that the report in question is unavailable.

**Res Judicata**

Defendants Equifax and Trans Union argue that the Amended Complaint is barred by the doctrine of <u>res judicata</u> because it involves claims arising out of the same transactions which were litigated and settled pursuant to the March 6, 2006, settlements in <u>Gaft I</u>. Similarly, defendants Experian and MMCA argue that each was voluntarily dismissed from <u>Gaft I</u> and, therefore, plaintiff is barred from bringing claims which could have been raised in the prior action.

Under the doctrine of <u>res judicata</u>, a "final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action." <u>Federated Dep't Stores, Inc. v. Moitie</u>, 452 U.S. 394, 398 (1981). "To prove that a claim is precluded under this doctrine, a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." <u>Pike v. Freeman</u>, 266 F.3d 78, 91 (2d Cir. 2001).

The dismissal with prejudice in <u>Gaft I</u>, which arose out of settlement agreements, can "operate[] as a final judgment for res judicata purposes." <u>Marvel Characters v. Simon</u>, 310 F.3d 280, 286-87 (2d Cir. 2002). Further, it cannot be disputed that defendants Experian, Equifax and Trans Union were parties in <u>Gaft I</u>.[5] The only question with respect to these defendants is whether the claims asserted here were, or could have been, raised in <u>Gaft I</u>. Of course, claims which are identical to those discontinued with prejudice are barred. <u>See</u> <u>Boguslavsky v. So. Richmond Securities, Inc.</u>, 225 F.3d 127, 130 (2d Cir. 2000). However, <u>res judicata</u> does not bar

---

[5] Defendant MMCA is discussed <u>infra</u>.

later "claims which did not even then exist and which could not possibly have been sued upon in the previous case." Marvel Characters, 310 F.3d at 287 (internal quotations omitted).

To determine whether a claim that was not raised in the prior action could have been raised there "depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." Id. (internal quotations omitted) (emphasis in original). A court should also consider "whether an independent judgment in a separate proceeding would impair or destroy rights or interests established by the judgment entered in the first action." Sure-Snap Corp. v. State Street Bank & Trust Co., 948 F.2d 869, 874 (2d Cir. 1991).

Although plaintiff's claims here concern the same general subject matter as in the prior action, i.e., the improper attribution of an extension credit, stemming from an identity theft, to plaintiff, it is not clear that each fact alleged by plaintiff existed or could have been sued upon at the time of Gaft I. Specifically, the Amended Complaint alleges that, following the settlement of Gaft I, MMCA reported a "new debt", "an 11th . . . lease or loan, which the plaintiff once again had no knowledge of." (Am. Compl. ¶ 11 (emphasis added).) In addition, plaintiff states that this "new debt", the Eleventh Account, was "discovered" some time in 2007, which post-dates the settlement and dismissal of Gaft I. Accepting these allegations as true, with all reasonable inferences to the plaintiff, the court cannot conclude, based on the pleadings, that the claims here existed at the time of Gaft I or are barred by the settlement agreements in that action.

Therefore, to the extent plaintiff's claims arose after the dismissal of Gaft I, and are not limited by the terms of the settlement agreements in Gaft I, those claims are not barred by res judicata.

Defendants Equifax and Trans Union argue that the Eleventh Account is "MMCA account number 8500500", that plaintiff previously verified the accuracy of this account as reported by Equifax and Trans Union and that claims based on this account are barred by the March 6, 2006, settlement agreements. While the settlement agreements have been incorporated by reference into the Amended Complaint and are appropriately considered here, see Poskanzer, 2009 WL 2171326, at *1, the court rejects defendants Equifax's and Trans Union's argument. Neither the Amended Complaint nor the settlement agreements identify the disputed account as MMCA account 8500500, and Equifax and Trans Union fail to explain how they identified the Eleventh Account as MMCA account 8500500.[6] In any event, even assuming that the Eleventh Account is MMCA account 8500500, and was subject to the settlement agreements, to the extent plaintiff's allegations concern a new misrepresentation of that account, different from what he verified as "accurate and correct," he is not barred by res judicata from bringing suit.

Defendant Experian also argues that res judicata bars this suit. Experian claims that plaintiff requested, from Experian, a credit report dated May 1, 2007, and argues that this credit report proves that the Eleventh Account existed at the time of Gaft I and that the claims raised here could have been raised in the prior action. However, plaintiff's pleadings make no

---

[6] Although plaintiff states, in his opposition papers, that he "concurs" that an erroneously reported outstanding debt "was part of the original settlement agreement," it is unclear whether he is identifying the Eleventh Account as part of the settlement or, alternatively, agreeing that the prior settlements concerned some erroneously reported debts. Further, plaintiff's statement does not preclude the claim that defendants have breached the settlement agreement by publishing0 a new misrepresentation concerning an account that was previously verified as accurate.

reference to, and do not indicate reliance on, the May 1, 2007, Experian report. Therefore, this document is extrinsic to the pleadings and not appropriately considered on a motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Finally, defendant MMCA also argues that <u>res judicata</u> bars claims against it by plaintiff. This argument is without merit. First, MMCA, cannot avail itself of the court's Order, dated March 27, 2006, dismissing <u>Gaft I</u>, with prejudice, as to the "remaining defendants", because MMCA had not been included in the <u>Gaft I</u> amended complaint and was no longer a party to that action as of the date of the court's Order. Second, although MMCA was voluntarily dismissed by plaintiff from <u>Gaft I</u>, correspondence, dated November 14, 2005, informing the court of plaintiff's dismissal of MMCA does not state whether the dismissal was with or without prejudice and no stipulation of dismissal pursuant to Rule 41(a)(1) of the Federal Rules of Civil procedure was ever filed with, or endorsed by, the court. "In light of Rule 41(a)(2)'s statement that voluntary dismissal by order of the court is without prejudice unless the court orders otherwise, the court assumes that [plaintiff] has agreed only to voluntary dismissal without prejudice." <u>Pouliot v. Paul Arpin Van Lines, Inc.</u>, 235 F.R.D. 537, 544 (D. Conn. 2006); <u>see also</u> <u>White v. City of New York</u>, No 85-CV-8127, 1986 WL 6164, at *1 (S.D.N.Y. May 27, 1986). Where a dismissal is without prejudice, <u>res judicata</u> does not apply. <u>See</u> <u>Camarano v. Irvin</u>, 98 F.3d 44, 47 (2d Cir. 1996); <u>Elfenbein v. Gulf & Western Industries, Inc.</u>, 590 F.2d 445, 449 (2d Cir. 1978).

It is worth noting, however, that plaintiff is barred, as a matter of law, from seeking damages from Equifax and Trans Union based on allegations that defendants are publishing credit information which plaintiff previously verified as "accurate and correct" pursuant to the March 6, 2006, settlements. Further, plaintiff is similarly barred from seeking damages, in this

action, from defendants Equifax, Trans Union and Experian based on allegations which could have been raised in, but were omitted from, Gaft I.

**Merits**

In addition to arguing that plaintiff's claims are barred by principles of preclusion, defendants also argue that the claims should be dismissed on the merits. In making this argument, defendants rely upon attached credit reports which, as discussed above, cannot be considered incorporated into the complaint or integral to it because it cannot be determined on the existing record whether the attached reports are the reports upon which the plaintiff is relying. Indeed, with respect to the report attached by Equifax, the contents of the report are completely redacted. But, even where the reports attached by the other defendants include a Mitsubishi debt, the court cannot assume that the debt listed is the one plaintiff is suing over. Moreover, as the plaintiff in opposition to the motions argues, either the reported debt he complains of is "new," that is, could not have been the basis for a claim in the prior litigation, or, if it could have been included, and was included, in the settlement agreement, as defendants argue, then its appearance after the conclusion of the prior litigation could be a breach of the settlement agreement. The point is that, on the pleadings, these factual issues cannot be determined.

Nonetheless, most of the claims must be dismissed for legal insufficiency, as discussed below.

**Violations of the Fair Credit Reporting Act**

The FCRA mandates certain conduct pertaining to the reporting of accurate consumer credit information and creates a private cause of action for willful non-compliance, <u>see</u> 15 U.S.C. § 1681n, and negligent non-compliance, <u>see</u> 15 U.S.C. § 1681o, with the duties under the statute. <u>See</u> <u>Casella v. Equifax Credit Info. Svcs.</u>, 56 F.3d 469, 473 (2d Cir. 1995). Plaintiff alleges that all defendants failed to comply, either willfully or negligently, with the duties imposed by the FCRA.

<u>Furnishers of Credit Information</u>

MMCA is a "furnisher of information to credit reporting agencies" as defined by the FCRA and its conduct is governed by Section 1681s of that Act. Section 1681s-2(a) relates to MMCA's duty to report information and the ongoing duty to correct inaccurate information. Plaintiff, however, cannot pursue a claim under Section 1681s-2(a) of the FCRA because the plain language of the statute limits enforcement of this subsection to government agencies and officials. <u>See</u> 15 U.S.C. § 1681s2-(a); <u>Ryder v. Wash. Mut. Bank, FA</u>, 371 F. Supp. 2d 152, 154 (D.Conn 2005).

A private right of action may be available to plaintiff against MMCA under Section 1681s-2(b), which provides:

> After receiving notice pursuant to section 611(a)(2)[, 15 U.S.C. § 1681i(a)(2),] of a dispute with regard to the completeness or accuracy of any information provided by a person[7] to a consumer reporting agency, the person shall—(A) conduct an investigation with respect to the disputed

---

[7] "The term 'person' means any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a.

> information; (B) review all relevant information provided by the consumer agency . . .; (C) report the results of the investigation to the consumer agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies . . . .

15 U.S.C. § 1681s-2(b)(1). Section 1681i(a)(2) requires a consumer reporting agency which receives notice of a dispute to provide notification to the provider of the information within five days of receipt. 15 U.S.C. § 1681i(a)(2)(A). Thus, according to the statute, the duties of MMCA are triggered only by notice from the consumer reporting agency and are limited to a duty to investigate the accuracy of the information previously provided. See Prakash v. Homecomings Financial, No. 05-CV-2895, 2006 WL 2570900, at *2-*3 (E.D.N.Y. Sept. 5, 2006). Here, plaintiff has not alleged that MMCA failed to complete an investigation with respect to the Eleventh Account—the duty imposed by statute.[8] Therefore, plaintiff's FRCA claims against MMCA must fail. See Willey v. J.P. Morgan Chase, N.A., No. 09-CV-1397, 2009 WL 1938987, at *4 (S.D.N.Y. July 7, 2009) (finding a failure to state a claim where plaintiff did not set forth "factual allegations that describe any insufficiency" in defendant's procedures).

Credit Reporting Agencies

The FCRA mandates that consumer reporting agencies meet multiple duties with respect to consumers and their credit information, including the duty to perform investigations of disputed information, 15 U.S.C. § 1681i; the duty to follow reasonable procedures to ensure the

---

[8] Although plaintiff alleges that MMCA failed to conduct an investigation concerning the "previous Identity Theft or fraud" which was "brought before the Court," MMCA's duty under the FCRA is limited to an investigation of the propriety of the Eleventh Account as reported to Equifax. In any event, plaintiff has offered no evidence, beyond reliance on his pleadings, of MMCA's failure to investigate any complaints by plaintiff, as required by Rule 56 of the Federal Rules of Civil Procedure.

accuracy of credit information, 15 U.S.C. § 1681e; and the duty to follow proper procedures in disposing of credit information, 15 U.S.C. § 1681w.

Plaintiff alleges that Experian, Trans Union and Equifax violated the FCRA by failing to "perform a mandatory investigation into plaintiff's written dispute concerning . . . erroneous debt." Following a dispute of credit information by a consumer, Section 1681i of the FCRA requires that a consumer reporting agency "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information" within 30 days of receipt of notice of the dispute. 15 U.S.C. § 1681i(1)(A). As stated above, the agency is also required to "provide notification of the dispute to any person who provided any item of information in dispute." Id. at § 1681i(2)(A). Then, within five days of completion of the reinvestigation, the agency must "provide written notice . . . of the results of a reinvestigation" to the consumer.[9] Id. at § 1681i(6)(A). In addition, upon request, an agency is required to provide a description of the procedure used to determine the accuracy and completeness of the credit information. Id. § 1681i(7).

Plaintiff's claims that defendants have failed to investigate are insufficient. As an initial matter, plaintiff failed to allege that he informed either Experian or Trans Union of any disputed

---

[9] Specifically, a consumer reporting agency is required to provide to the consumer,

> (i) a statement that the reinvestigation is completed; (ii) a consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation; . . . (iv) a notice that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the information; and (v) a notice that the consumer has the right to request under subsection (d) of this section that the consumer reporting agency furnish notifications under that subsection.

15 U.S.C. § 16811(6)(B).

item.  Therefore, those defendants had no duty to investigate under the FCRA.  See Caltabiano v. BSB Bank & Trust Co., 387 F. Supp. 2d 135, 140 (E.D.N.Y. 2005).

Plaintiff does allege that he "disputed the accuracy of his Credit Report with Equifax"; however, plaintiff also states that Equifax responded to plaintiff that "Equifax had investigated the matter and was certain that the debt was [] that of the plaintiff."  Plaintiff fails to allege that Equifax failed to provide any of the information required by Section 1681i(6)(B).  See supra note 8.  Further, plaintiff does not allege that Equifax failed to comply with its statutory duty to inform defendant MMCA of the disputed item.  For these reasons, plaintiff's claim concerning Equifax's failure to investigate is deficient.

The FCRA, under Section 1681e, also mandates that consumer reporting agencies "follow reasonable procedures to assure maximum possible accuracy" of a credit report.  See 15 U.S.C. § 1681e(b).  A Section 1681e claim requires plaintiff to "show that (1) the consumer reporting agency was negligent or willful in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury."  Gorman v. Experian Info. Solutions, Inc., No. 07-CV-1846, 2008 WL 4934047, at *4 (S.D.N.Y. Nov. 18, 2008).

Here, the Amended Complaint alleges that defendant consumer reporting agencies reported inaccurate information causing damage to plaintiff's "reputation, Credit worthiness, and personal health."  (Am. Compl. ¶ 23.)  However, an inaccurate entry of credit information, in and of itself, is not a violation of the FCRA; rather, to state a claim under Section 1681(b), plaintiff must allege that the consumer reporting agencies failed, through negligence or intention, to follow reasonable procedures to ensure the accuracy of the information.  See Gorman, 2008 WL

4934047, at *4. Plaintiff's Amended Complaint is devoid of any allegations concerning the reasonableness of the procedures used by the defendant consumer reporting agencies. Therefore, plaintiff's claim that defendants failed to comply with their duties under the FCRA, to the extent that claim refers to any duty to follow reasonable procedures to ensure the accuracy of information, must fail. See Willey, 2009 WL 1938987, at *4.

Finally, plaintiff makes no mention of, nor does he allege, facts related to any defendants' duty to properly dispose of consumer credit information.

For the reasons stated above, plaintiff has failed to state a claim, as a matter of law, against any defendant for failure to comply with the duties mandated by the FCRA.


### Violations of the Fair Debt Collection Practices Act

Plaintiff also alleges that all defendants have violated the FDCPA which was enacted in order to eliminate abusive practices in the collection of consumer debts. Specifically, plaintiff alleges that defendants violated section 807(2)(A) of the FDCPA by misrepresenting the character, amount and legal status of the debt owed by plaintiff. Section 807(2)(A) prohibits a "debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of a debt." 15 U.S.C. § 1692e (emphasis added). A "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." Id. at § 1692a. However, the statute specifically exempts from the definition of "debt collector" any creditor attempting to collect debts it is owed. Id.

Plaintiff's allegations under the FDCPA are insufficient for two reasons: first, no defendant, as alleged, is a "debt collector" within the meaning of the FDCPA. Second, plaintiff has not alleged that defendants have engaged in any attempt to collect a debt from plaintiff. Therefore, plaintiff's claims under the FDCPA are dismissed. See Fashakin v. Nextel Comm'ns, No. 05-CV-3080, 2006 WL 1875341, at *7 (E.D.N.Y. July 5, 2006).

**State Law Claims**

In addition to the FCRA and FDCPA claims, plaintiff also brings four state law claims: (i) slander of title; (ii) fraud; (iii) gross negligence and (iv) negligence per se.

Limitation on Liability/Preemption

As an initial matter, the court notes that two sections of the FCRA potentially preempt plaintiff's claims. First, Section 1681h(e) provides:

> Limitation on liability. Except as provided in sections 1681n and 1681o, no consumer may bring any action for proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency . . . or any person who furnishes information to a consumer except as to false information furnished with malice or willful intent to injure such customer.

15 U.S.C. §§ 1681h(e) (emphasis added). In addition, Section 1681t(b)(1)(F) of the FCRA, which applies only to furnishers of credit information, provides:

> No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2, relating to responsibilities or persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply [to specific sections of the Massachusetts Annotated Laws and the California Civil Code.]

15 U.S.C. § 1681t(b)(1)(F).

Of these two provisions, only Section 1681h(e) might apply to plaintiff's state law claims against the consumer reporting agency defendants. That section "does not preempt every possible action, as it allows plaintiffs to maintain tort actions, including defamation and negligence claims, but requires plaintiffs to prove malice or willful intent for such claims." Kane v. Guaranty Residential Lending, Inc., No. 04-CV-4847, 2005 WL 1153623, at *6 (E.D.N.Y. May 16, 2005).

By contrast, both Section 1681h(e) and Section 1681t(b)(1)(F) may apply to claims against MMCA. Because these provisions appear to be contradictory, courts have devised multiple approaches in order to reconcile them. See Prakash, 2006 WL 2570900, at *5 ("Though § 1681t(b)(1)(F) appears to preempt all state law claims, Congress did not withdraw § 1681h(e)—which preempts certain state law claims, but impliedly permits others—when it added § 1681t(b)(1)(F) to the code in 1996."); see also Kane, 2005 WL 1153623, at *5-*11 (collecting cases). As discussed below, with respect to the claims against MMCA, it is unnecessary for the court to adopt an approach to resolve the tension between these preemption provisions.

Slander of Title

Plaintiff alleges that each defendant made "false and malicious statements" amounting to slander of title. Even assuming that this claim is not pre-empted by the FCRA, plaintiff's pleadings are insufficient.

In New York, to state a claim for slander of title a plaintiff must allege that (i) defendant made a "communication falsely casting doubt on the validity of [the] complainant's title"; (ii) which was "reasonably calculated to cause harm; and (iii) "result[ed] in special damages." 39 College Point Corp. v. Transpac Capital Corp., 27 A.D.3d 454, 455 (N.Y., 2d Dept., 2006).

However, a plaintiff cannot make a claim of slander of title where the plaintiff does not have title to the property about which a communication was made. See White & Baxter, Inc. v. Jade Square and Tower, Ltd., 62 A.D.2d 963, 963 (N.Y., 1st Dept., 1978). The essence of plaintiff's claims are that he has been misattributed an extension of credit, and the associated debt, for something that he never applied for or owned. Because plaintiff makes no allegations that any defendant has disparaged a title that plaintiff actually holds, the slander of title claim must fail as to all defendants.

Fraud

Plaintiff alleges that each defendant committed an act of fraud by "acting in concert with one another" and "accepting a fraudulent credit application" which resulted in plaintiff being improperly named "on 11 or more separate occasions as the true debtor for a loan or lease from the defending creditor Mitsubishi." Plaintiff alleges, "on information and belief", that this fraud stemmed from "unknown unidentified employees or agents" of MMCA who have improperly gathered, and misused, plaintiff's credit information. Even assuming that this claim is not pre-empted by the FCRA, plaintiff's pleadings are insufficient.

In New York, a claim of fraud requires plaintiff to plead a material false misrepresentation or omission of an existing fact, which defendants made with knowledge of its falsity and intent to defraud, and which plaintiff relies upon to his detriment. Guilbert v. Gardner, 480 F.3d 140, 147 (2d Cir. 2007). Fraud claims under New York common law are also subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. See Steinberg v. Sherman, No. 07-CV-1001, 2008 WL 2156726, at *5 (S.D.N.Y. May 8, 2008). "The pleadings must adequately specify the statements that were allegedly false or misleading, provide particulars as to the alleged falsity of the statements, state the time and

place the statements were made, and identity [of] the persons who made them." Hunt v. Enzo Biochem, 530 F. Supp. 2d 580, 593 (S.D.N.Y. 2008).

Here plaintiff's fraud pleading is insufficient. First, plaintiff has failed to plead any reliance on the purportedly false statement of the defendants. Second, plaintiff has failed to state, with particularity, the purportedly false statement (i.e., the Eleventh Account), for example, the account number and any details related to that account. For these reasons, plaintiff's common law fraud claim is dismissed as to all defendants.

Negligence Actions

Plaintiff alleges two claims based in negligence; specifically, that each defendant's failure to comply with "a manifest duty imposed upon them by [the FCRA]" constituted (i) "gross negligence", and (ii) "negligence per se." As stated above, a negligence action stemming from the reporting of consumer credit information is limited by Section 1681(e) of the FRCA, which requires that the plaintiff allege that defendants published false information "with malice or willful intent to injure" plaintiff. See 15 U.S.C. § 1681h(e). "Malice," in the context of the FRCA, holds the same meaning as it does in a libel action, in other words, "the speaker knew [the report] was false or acted with reckless disregard for its truth or falsity." George v. Equifax Mortg. Services, No. 06-CV-971, 2008 WL 4425299, at *9 (E.D.N.Y. Sept. 30, 2008). "Willful," in the context of the FRCA, "require[s] a showing that the agency knowingly and intentionally committed an act in conscious disregard of the rights of others." Id. (internal citations omitted).

Therefore, here, plaintiff's claims "gross negligence"[10] and "negligence per se"[11] require plaintiff to allege facts which, if true, demonstrate, with plausibility, rather than the mere possibility, that defendants knew the Eleventh Account to be false, or that the defendants acted with conscious or reckless disregard for its falsity.  See Marekh v. Equifax, et al., No. 00-CV-6246, 2001 WL 65602, at *1 (2d Cir. Jan. 25, 2001); Whelan v. Trans Union Credit Reporting Agency, 862 F. Supp. 824, 834 (E.D.N.Y. 1994).

*Consumer Reporting Agencies*

A reading of the Amended Complaint, with all reasonable inferences in favor of the pro se plaintiff, leads the court to conclude that plaintiff may be alleging that, although each credit reporting agency defendant knew plaintiff was the victim of identity theft in 2006 resulting in false items appearing on plaintiff's credit report, which was followed by a litigation and settlement, Mitsubishi acted with "gross negligence," in 2007, by reporting a new false item—the Eleventh Account—to Equifax and then, subsequent to the filing of the original Complaint in this action, again reporting that account to Experian and Trans Union.  (See Am. Compl. ¶ 22.) The credit reporting agencies then allegedly acted with "gross negligence" by incorporating this new, false item into their credit reports.

---

[10] In New York, gross negligence "is conduct that evinces a reckless disregard for the rights of others and smacks of intentional wrongdoing."  Sutton Park Development Corp. Trading Co. v. Guerin & Guerin Agency, 297 A.D.2d 430, 432 (N.Y., 3rd Dept., 2002).

[11] In New York, "negligence per se" requires that the plaintiff establish "(1) that he or she is among the class of people for whose particular benefit a statute has been enacted; (2) that a private right of action would promote the legislative purpose behind the statute; and (3) that creation of the right would be consistent with the overall legislative scheme."  Fagan v. AmerisourceBergen Corp., 356 F. Supp. 2d 198, 214 (E.D.N.Y. 2004).  Under this theory, if a defendant violates a statute it is per se negligence and then the plaintiff only need show that the violation of the statute proximately caused injury to the plaintiff.  See German by German v. Fed. Home Loan Mortg. Corp., 896 F. Supp. 1385, 1396 (S.D.N.Y. 1995).  However, this standard is inconsistent with the limitation imposed by Section 1681h(e) requiring a demonstration of willful or malicious intent to injure the plaintiff.

Plaintiff has alleged facts which, if true, could show that each of the credit reporting agencies acted with reckless disregard for the reporting of false information on plaintiff's credit reports.

Therefore, with respect to defendants Trans Union, Equifax and Experian, to the extent plaintiff is alleging that defendants acted with malice or reckless disregard for the truth of the Eleventh Account because defendants were on notice of a prior identity theft, plaintiff has stated a claim for gross negligence as required by Section 1681h(e) of the FRCA.

*Furnishers of Credit Information*

Unlike the credit reporting agency defendants, which have moved for judgments on the pleadings, MMCA has moved for summary judgment. As discussed above, if the nonmoving party will bear the burden of proof at trial, but there is an absence of evidence in the record as to an essential element of his claim, summary judgment is appropriate. See Shah v. Kuwait Airways Corp., No. 08-CV-7371, 2009 WL 2877604, at *2 (S.D.N.Y. Sep. 9, 2009) (Lynch, J.) Here, MMCA argues that there is no evidence in the record creating an issue of fact as to whether plaintiff suffered damages proximately caused by MMCA. Indeed, Gaft has not identified any evidence, beyond the pleadings, whether through affidavits, documents or deposition testimony, that the law would regard as damages caused by MMCA through reckless or conscious disregard, or malice, concerning the falsity of the Eleventh Account. Therefore, even assuming that the negligence claims against MMCA are not preempted, summary judgment is appropriate.

## Conclusion

For the foregoing reasons, each of plaintiff's federal claims under the Fair Credit Reporting Act and the Fair Debt Collecting Practices Act are dismissed. In addition, plaintiff's

state law claims for fraud and slander of title are dismissed.  Defendants Experian's, Equifax's and Trans Union's motions to dismiss plaintiff's negligence claims are denied.  Defendant MMCA's motion for summary judgment against plaintiff's negligence claims is granted.

**SO ORDERED.**

_____
**/s/ Nina Gershon**
Nina Gershon, U.S.D.J.


Dated:  September 22, 2009
      Brooklyn, NY